In the Matter of the Estate of DAVID J. ELY, Deceased.

Surrogate's Court, Suffolk County, October 29, 1934.

*Simpson, Thacher & Bartlett,* for the executor.

*Watson & Willguss* [*Archibald R. Watson* and *Hyman W. Gamso* of counsel], for the specific legatee and claimant, George M. K. Hudson.

*Choate, Larocque & Mitchell,* for the specific legatee, Union Club.

*Platt & Walker,* for the general guardian and the residuary legatees.

*Robbins, Fowler, Wells & Walser,* claimants, in person.

PELLETREAU, S. The testator, a bachelor, died August 25, 1932, leaving a will dated November 12, 1930.

The questions presented by this accounting arise out of the inadequacy of the testator's estate to meet his debts and bequests.

Testator gave money bequests totaling $15,000 and specifically bequeathed the personal property other than money which he possessed. The rest of his estate, both real and personal, he directed to be placed in trust. At the time of testator's death there were claims pending against him in excess of $55,000. To meet these bequests and claims he left an estate consisting of personal property not specifically bequeathed totaling $4,280.47, personal property specifically bequeathed totaling $3,337.50 and real estate estimated to exceed $60,000 in value. Only a few dollars of his estate was in cash, the personal property consisting of articles of tangible personal property. During the administration of the estate the executor received income of $4,309.87 and spent for funeral and administration expenses $8,689.98.

There is no doubt but that the money bequests abated because the personal property of the decedent not specifically bequeathed was insufficient to meet even the funeral and administration

expenses. The question now before the court is whether the real estate or the personal property specifically bequeathed shall be first applied to the payment of debts and funeral and administration expenses. Subordinate to that issue are the questions whether interest is to be paid upon claims and what shall be done with the real property of the testator.

It is still the law that the marshaling of assets of an estate for the payment of debts should be in the following order as laid down in *Duck* v. *McGrath* (160 App. Div. 482 [2d Dept.]), as follows: " *First*, the personal estate, and of this (a) the personal estate not bequeathed; (b) the personal estate generally bequeathed; (c) the personal estate specifically bequeathed; and *second*, the real estate, and of this (a) property which has descended to the heirs at law; (b) that which is generally devised, and (c) that which is the subject of, a special devise." (*Matter of King*, 97 Misc. 528; *Rogers* v. *Rogers*, 1 Paige, 188; *Nagel* v. *McGinnis*, 49 How. Pr. 193.)

The rule is likewise statutory, section 214 of the Surrogate's Court Act providing as follows:

" § 214. Sale of personal property for payment of debts or legacies. An executor or administrator may sell the personal property of the deceased at any time for the payment of debts, or legacies, or for making distribution. The sale may be public or private, and may be on credit not exceeding one year, with approved security. Articles not necessary for the support and subsistence of the family of the deceased, or not specifically bequeathed, must be first sold; and articles *so bequeathed* must not be sold until the residue of the personal estate has been applied to the payment of debts."

Similar statutory confirmation is found in tracing that portion of subdivision 5 of section 234 of the Surrogate's Court Act which was eliminated by section 11 of chapter 174 of the Laws of 1930. The words eliminated from subdivision 5 of section 234 of the Surrogate's Court Act read as follows: " No mortgage, lease or sale shall be ordered for the purpose of any of the foregoing payments, if there be personal property within the state of New York applicable to the full payment and discharge thereof."

This elimination had been the law for many years back to the days of the Code of Civil Procedure when it was section 2703 and continued as the law to September 1, 1930, save only for the amendment by chapter 519 of the Laws of 1929, which added only to the personal property the words " within the state of New York." Thus on September 1, 1930, while this long-time provision was eliminated from section 234 of the Surrogate's Court Act, it was nevertheless reinserted as to sale in substance by incorporation in section 238 of the Surrogate's Court Act, as amended by chapter 229 of the Laws of 1929 and chapter 174 of the Laws of 1930,

where said last-mentioned section provides: "If it appears that a sale be necessary for the purposes set forth in subdivisions one, two, three, four or five of section two hundred and thirty-four of this act *and there is deficiency of personal estate within the state.*"

Likewise, and it must have been because no change in section 214 of the Surrogate's Court Act was made by the revision under chapter 174 of the Laws of 1930 or recommended by the Commission appointed by the Legislature of 1927 and headed by Surrogate FOLEY, that in the Commissioners' notes we find the following comment: "The Commission has recommended no change in the present rule that personal property shall be the primary fund for the payment of debts, legacies and administration expenses."

And with reference to the additions to section 238 of the Surrogate's Court Act under the 1930 revision by adding "and there is deficiency of personal estate," the revisers' note of 1914 is also pertinent as follows: "The order may do any one or all of three things; direct a mortgage, lease or sale *on account of deficiency of personal estate,* direct a sale for the purposes of distribution, or direct payment to the representative, of any proceeds already held by the court subject to the order of the surrogate's court."

Thus, in effect, that portion of subdivision 5 of section 234 of the Surrogate's Court Act which was eliminated by the revision of 1930 was restored by the same revision by insertion in section 238 as to sale.

*Taylor* v. *Dodd* (58 N. Y. 335), while reaching a contrary conclusion because of special clauses appearing in the will, none of which are present in the case at issue, only confirms the rule where the opinion in its beginning states: "The personal estate of a testator is to furnish the fund for the payment of legacies. This is the general rule. But the personal estate may be entirely exonerated, or the real estate may be made to aid the personal, if there be express direction to that effect in the will, or if such be the clear intent of the testator to be gathered from its provisions."

In the will before us, made in 1930, there is no express direction that any of the personal estate be exonerated or that the real be made to aid the personal, nor is there anything in the provisions of the will from which such a clear intent of the testator can be gathered, nor was any record made upon the hearing covering these points in any way.

Furthermore, the mere fact that a power of sale is contained in the will is not sufficient to change the rule as not only must the debts be charged upon the land but the personalty must be also exonerated. Both elements are necessary to change the rule. (*Rogers* v. *Rogers*, 3 Wend. 503; *Matter of Neely*, 24 Misc. 255.)

I conclude, therefore, that the application of the assets of this estate for payment of debts must be as follows:

1. The general personal estate.
2. The personal estate specifically bequeathed.
3. The real property.

The natural regret, which every one must feel, to see what the testator evidently intended to be souvenirs and personal remembrances lost to the respective beneficiaries is somewhat softened by the fact that they have consented to a sale of these articles and to receive the proceeds in cash, and the result as a whole is merely another instance of what the times have done to estates.

The Walser claim is allowed at $1,500, but as the services were on a *quantum meruit* it should be apportioned at the sum of $1,000 as part of the expenses of administration and $500 as a general creditor. Expenses of administration and funeral expenses are payable in full.

The real property is because of its peculiar nature unsalable at the present time and is burdened with a mortgage held by the First National Bank of Mineola. To conserve this property against the time when it may possibly be sold for sufficient to pay all creditors, the rents available therefrom should be applied to the payment of the past due interest and taxes, which was stated to be agreeable to the mortgagee by its attorney in open court.

Inasmuch as the apparent value of the entire real and personal property of the estate of whatever character is not much above the amount of the admitted debts, I believe the question of interest should be entirely eliminated, except as to such indebtedness as has interest attached as a matter of law like discounted notes, judgments, brokerage accounts, and the like.

Decreed accordingly. Settle decree on notice.