In the Matter of the Construction of the Will of KATHERINE E. MALLOUK, Deceased.

Surrogate's Court, Kings County, July 21, 1949.

*Walter E. Beer, Jr.,* and *Maurice Heckscher* for George Mallouk, as executor of Katherine E. Mallouk, deceased, petitioner.

*Walter Bruchhausen,* special guardian for John G. K. Haddad and others, infants.

McGarey, S. In this proceeding construction is sought of subdivision " d " of paragraph " Fifth " of testatrix' will to determine whether the provisions thereof create an unlawful suspension of the power of alienation by providing for a trust which may continue for more than two lives in being at the time of the death of the testatrix.

This court believes and holds that the provisions of that paragraph violate the statute dealing with suspension of the power of alienation and therefore the trust is invalid and in the absence of any effective compromise under section 19 of the Decedent Estate Law, the estate would pass to the residuary legatee. He having renounced the residuary legacy the corpus of the trust devolves as in intestacy.

In reaching this conclusion the court is aware of the fact that all of the parties to this proceeding advocate a determination which would sustain the validity of the trust and that in any appellate review of the conclusion here reached there will be no one in this proceeding who will urge the invalidity of the trust.

The court has unsuccessfully suggested that the problem could be solved by an effective agreement under section 19 of the Decedent Estate Law, but the parties for personal reasons have declined to accept such suggestion. The court believes that such a compromise, which would carry out what seems to have been the desires of the testatrix, would be a proper solution of the difficulties and avoid unnecessary expense to the estate and the parties involved.

In any determination of a construction proceeding the facts surrounding the execution of the testamentary instrument should be considered. The will in question was executed in July of 1946, in Pennsylvania, where testatrix had a summer residence. While this fact may not appear definitely in the record, it has been stated to be a fact by counsel in the argument of the construction question and may reasonably be inferred from the fact two of the three witnesses to the will gave their addresses as Milford, Pennsylvania, and were apparently members of the testatrix' household. Furthermore the original document presented for probate bears the name of a firm of lawyers in Phila-

delphia in that State. This fact is of importance in considering the construction question because the trust provision would be valid under the laws of Pennsylvania if it related to Pennsylvania real estate.

It is apparent both from the argument of counsel and their memoranda of law and all facts surrounding this proceeding that all of the parties are in full accord and anxious to carry out the wishes of the testatrix even though such action would result in a substantial loss of benefits to the children of testatrix in favor of her grandchildren. The testatrix' son has renounced all benefits conferred upon him under the residuary clause of the will reserving, however, any right he may have to share in intestate distribution. The court commends the children for their attitude but believes that the only method of effectively carrying out such objective would be a compromise under section 19 of the Decedent Estate Law because otherwise this court must necessarily decide the issue in accordance with the prevailing law and decisions in this State even though it may be most sympathetic toward the position taken by the parties. (*Matter of Morrison,* 173 Misc. 503, 509 and cases cited.) Such a compromise agreement could also effectively include authority for the trustees to provide for a depreciation reserve in connection with the real estate in accordance with the thoughts expressed in the decisions in *Matter of Werbelovsky* (192 Misc. 621) and *Matter of Kaplan* (195 Misc. 132).

Testatrix died on the 11th day of November, 1947, leaving surviving as her only distributees a son and a daughter. In addition to her two children she left four grandchildren surviving, the children of her said son and daughter, three of whom were living at the date of the execution of her will, the fourth having been born between that date and testatrix' death, to wit, September 13, 1947. By the terms of her will testatrix bequeathed to her daughter certain personal belongings located in a foreign country and made specific devise to her of a parcel of real property there and to her son she bequeathed certain personal property at her summer residence in another State and devised to him such summer residence and a parcel of real property in this county. The only other dispositive provision in the will aside from the clause here under construction and the residuary clause bequeaths $5,000 to a nonrelative. The foregoing recitation of facts sheds some light on her intention with respect to the attempted disposition made under subdivision " d " of paragraph " Fifth " of her will.

The clause of the will of which construction is sought, subdivision "d", paragraph "Fifth" is as follows: "To my Trustees hereinafter named the premises owned by me at 8300 Fourth Avenue, Brooklyn, New York, and 711 Brightwater Court, Brooklyn, New York (Brighton Beach), IN TRUST, to hold and manage the same and invest and reinvest any proceeds of sale of the same, under and subject to the provisions for investment hereinafter set forth, and to collect and receive the rentals, dividends, interest, issues, profits and income therefrom and, after deduction of all expenses of administration, to pay the net income quarterly in equal shares, that is to say, per capita and not per stirpes, to my grandchildren (being the children of my son, George Mallouk, and my daughter, Virginia Boulad), who are living at the time of each quarterly distribution, the issue of any grandchild of mine who may be deceased at any quarterly distribution to take the parent's share per stirpes. When the last of my grandchildren, that is to say, the children of my said son and daughter, living at the time of my death attains the age of twenty-one, or upon the death of the last of said children living at my death, whichever event shall sooner occur, this trust shall thereupon terminate and the principal shall be paid over and distributed absolutely per capita to the children of my said son and daughter living at the time for distribution, the issue of any grandchild of mine who may be deceased to take the parent's share per stirpes."

The testatrix has definitely and clearly provided for a trust term measured by lives in being at the time of her death and no invalidity of the trust may arise by reason of any possibility of a trust measured by lives not in being at her death (*Harrison v. Harrison*, 36 N. Y. 543; *Purdy v. Hayt*, 92 N. Y. 446; *Cochrane v. Schell*, 140 N. Y. 516; *Matter of Davison*, 134 Misc. 769, affd. 230 App. Div. 867; *Matter of Friend*, 168 Misc. 607, affd. 257 App. Div. 924, mod. on other grounds, 283 N. Y. 200; *Matter of Trischett*, 184 Misc. 599, affd. 270 App. Div. 767). During the period of permissible suspension of two lives in being at the creation of the trust a testator may make such disposition of the income among as many persons as he sees fit (*Schermerhorn v. Cotting*, 131 N. Y. 48; *Matter of Campbell*, 177 Misc. 426). The question presented for solution arises from the language used by testatrix providing for the time of the termination of the trust " When the last of my grandchildren  *  *  * living at my death " attains twenty-one or sooner dies. Did the testatrix intend thereby that the trust was to terminate on the

youngest grandchild, living at her death, attaining majority, or his death prior thereto, or was it her intention to continue the trust until the last surviving grandchild, living at her death, shall attain twenty-one years of age, or until the death of such last survivor, whichever event shall sooner occur? The parties contend for the former, arguing that by inserting the word " born " after the word " last " so that the term of the trust would terminate on the " last born " of her grandchildren, living at her death, attaining his majority or his sooner death, the intention of testatrix is made clear.

The court is aware of its power to insert or transpose words in the text of a will in order to arrive at the intention of testatrix. Such course is permissible only where the phraseology is susceptible of two constructions, one leading to invalidity, the other validity, and the insertion, substitution or transposition of words will effectuate the intention of testatrix. (*Leggett* v. *Stevens,* 185 N. Y. 70; *Matter of Gallien,* 247 N. Y. 195; *Matter of Barr,* 233 App. Div. 290, affd. 258 N. Y. 592; *Matter of Smith,* 263 App. Div. 588, affd. 289 N. Y. 667; *Matter of Browning,* 165 Misc. 819, affd. 254 App. Div. 843, affd. 281 N. Y. 577; *Matter of Nelson,* 268 N. Y. 255.) Judicial surgery is permissible where the intent is manifest but such intention must be revealed by the language of the will. The court may construe but care must be exercised in its attempt to carry out the testator's intention that it does not construct or make a new will. (*Central Trust Co.* v. *Egleston,* 185 N. Y. 23; *Leggett* v. *Stevens, supra*; *Matter of Durand,* 250 N. Y. 45).

In *Matter of Trevor* (239 N. Y. 6), Judge POUND, in discussing the power and duty of the court to preserve what is essential and legal and eliminate that which is illegal and of minor consequence, without in so doing rewriting or mutilating the will, said at page 18: " In thus construing the will the court does not perform a radical operation to remove a malignant growth where either the disease or the operation will take the life out of the testamentary document. The irritation of invalidity has produced, not a cancer, but, at worst, an epidermal callosity which may be harmlessly eliminated."

The court, however, is of the opinion that the language used by testatrix is not capable of the construction advanced by the parties but rather that the words indicate an intention that the trust continue so long as any of her grandchildren, living at her death, should be under twenty-one years of age or until the death of the last survivor of said grandchildren.

The testamentary scheme of testatrix is simple and definite. It is apparent that she intended a fairly equal division of her assets, other than the two parcels of real property described in the clause of the will under construction, between her two children, reserving the income of such realty and the ultimate disposition of the corpus to their descendants. The designation of her son as the residuary legatee under her will in no way detracts from her plan, since she has apparently disposed of substantially all her assets by the other provisions of her will. The fact that changes in the nature of the assets in the foreign country, which she has specifically bequeathed and devised to her daughter, may, by law change the ultimate right to such assets is not indicative of any change of or difference in affection as between her children. The action of her son in renouncing his interest in the estate as such residuary legatee, thereby conferring upon his sister an equal right with him to share in such of the assets of testatrix as not otherwise specifically disposed of by her will, including the realty involved in this construction proceeding in the event the trust attempted to be created thereof is declared invalid, is cogent evidence of the close family ties uniting the parties.

The first and foremost principle of construction of a will is that the court must search for the intention of testator and having ascertained it must give it effect, provided that it is not in violation of any statute or contrary to law. (*Robinson* v. *Martin*, 200 N. Y. 159; *Matter of Buechner*, 226 N. Y. 440; *Matter of Martin*, 255 N. Y. 248; *Matter of Watson*, 262 N. Y. 284). The intention must be found in the express language of the will or flow therefrom by necessary implication (*Matter of Silsby*, 229 N. Y. 396; *Matter of Tod*, 260 App. Div. 627) and the instrument must be read in its entirety or, as commonly expressed the wishes of the testator are to be gathered from " the four corners of the * * * will ". (*Matter of Birdsell*, 271 App. Div. 90, 93, affd. 296 N. Y. 840.) The court, in its endeavor to ascertain the intention of testatrix may supply, transpose or substitute words, but the words used by testatrix must ordinarily be given their usual meanings. (*Dwight* v. *Fancher*, 217 App. Div. 377, affd. 245 N. Y. 71, motion for reargument denied 245 N. Y. 565; *Matter of Farmers' Loan & Trust Co.*, 213 N. Y. 168; *Matter of Davis*, 186 Misc. 955, affd. 271 App. Div. 970, motion for leave to appeal to the Court of Appeals dismissed, 296 N. Y. 1053.)

The word " last " as used by testatrix here is the crux of the problem. It is defined as that which remains after all others,

or final. Did the testatrix use the word as intending the trust to endure so long as any of her grandchildren might be under the age of twenty-one years or did she intend to convey the thought that the trust period was to continue only until the grandchild last born prior to her death should attain majority, or sooner die? If the former was her wish then the trust might continue for more than two lives in being at her death, with consequent violation of the Statute of Perpetuities, section 42 of the Real Property Law, and be an invalid suspension, whereas, if the word was intended to apply to the youngest grandchild living at her death there could be no possible suspension for more than one life and the trust would be valid.

Analyzing the testamentary plan of testatrix, her provisions for substantially equal division of her assets, aside from the two parcels of realty devised to her trustees, between her son and daughter, and the provisions intended to care for her grandchildren living at her death and others that might thereafter be born, the inevitable conclusion is that she intended no division of the corpus so long as any of her grandchildren, living at her death, should be minors. There were three grandchildren alive at the execution of the will, the youngest only two months of age, the oldest fifteen years. Testatrix undoubtedly foresaw the possibility of the birth of other grandchildren either before or after her death (a fourth was born two months before her death) and she wished to provide for them so long as it was possible and at the same time cloak in her beneficence those who might thereafter be born. Undoubtedly realizing that by selecting the youngest of her grandchildren, living at her death, as the measuring life, that his or her death would terminate the trust, with distribution of the corpus, leaving unprovided others that might thereafter be born, which would destroy her avowed purpose of providing for them all during their tender years, she attempted to continue the trust for such time, at least, as any of her grandchildren living at her death should be minors. That such was her plan and intention is apparent and analysis of the language used clearly demonstrates. She expressed two alternative thoughts; that the trust should terminate, 1. when the youngest of her grandchildren living at her death, should attain the age of twenty-one and 2. if the youngest should die prior to his majority, then when the last of the remaining grandchildren should attain twenty-one or sooner die. In either of such events, were her plan valid, she would have provided for her grandchildren during their minorities as far as she

could, having undoubtedly been advised that the measuring life or lives must be in being at her death. In no other way could she be assured of longer protection for her grandchildren.

No case has been cited to justify the contention of the parties that the word " last " as used in this will should be construed as " youngest " nor has the independent research of the court revealed one. The parties, however, ask the court to insert after the word " last ", in the two places where it appears, the word " born ", which would limit the trust period to the minority of the youngest grandchild, living at testatrix' death, or his sooner death, giving validity to the trust. Had such been the plan of testatrix, substitution of the word " youngest " for " last " in the first place used and eliminating entirely the expression " or upon the death of the last of said children living at my death " in the preparation of the will would have been simple and have avoided repetition and surplus words. The insertion of this last-quoted expression impresses the court that testatrix intended two alternative provisions to govern the term of the trust, either on the youngest to survive her reaching twenty-one or the last of such grandchildren to reach that age or sooner die. In her attempt to insure protection for all her grandchildren in their early years, she has violated the Statute against Perpetuities and her plan has failed.

The cases cited by petitioner construing wills containing what are claimed to be provisions most similar to the will of testatrix, *Boecher* v. *Smada Realty Co.* (164 App. Div. 837) and *Matter of Bahrenburg* (130 Misc. 196, affd. 214 App. Div. 792, affd. 244 N. Y. 561) are distinguishable. In both cases the word " youngest " was used, the first being " the youngest surviving child " and the latter the expression used being " my youngest child then living " and in both the word was construed as intending the youngest child living at the death of the testator. In each the language is more explicit and in neither is there such an alternative expression as contained in the instrument here involved " or upon the death of the *last* of said children ", which is indicative of the intention that if one event did not happen then the other was to apply.

The familiar canon of construction that if the language of the instrument is ambiguous and susceptible of two interpretations, one lending validity, the other invalidity, the former is preferred, is cited and in support of applying such rule petitioner cites *Matter of Gallien* (247 N. Y. 195, *supra*), *Matter of Drake* (153 Misc. 691, affd. 246 App. Div. 758), *Matter of Trischett*

(184 Misc. 599, *supra*), and *Matter of Carvalho* (57 N. Y. S. 2d 311, affd. 269 App. Div. 904). Here, however, the court believes the language is not ambiguous nor capable of two interpretations, as the testatrix undoubtedly intended '' last '' to mean '' the last remaining '', that is to say, upon the last of the grandchildren to attain the age of twenty-one years or upon the sooner death of the last survivor of her grandchildren, living at her death.

*Matter of King* (81 N. Y. S. 2d 82), decided by this court, cited in support of the proposition that of two possible constructions of a will, one lending to validity the other invalidity, the former must be preferred, is distinguishable. Successive trusts were provided by the will, the remainders, under certain circumstances, to be added to other trusts and the court held that such of the trust estates as had been held for the statutory two lives in being could be held no longer in suspension, the remainders passing as in intestacy.

It is suggested by the petitioner that if the trust cannot be sustained in its entirety it may be validated by excising the invalid provisions and sustaining the trust for the minority or sooner death of the youngest grandchild, living at the death of testatrix. The argument is based on the false premise that the will is susceptible of a construction creating trusts for four successive lives in being, whereas a single trust is created with the possibility of continuing during the lives of the four grandchildren of testatrix living at her death. Such an interpretation would require the selection by the court of the grandchild upon whose life or minority the trust period would be measured but there is no warrant or basis for the assumption of that power by the court. The statement of Judge CARDOZO in *Matter of Horner* (237 N. Y. 489, 493) is particularly appropriate: '' If the dominant purpose is the creation of a single trust subsisting during four minorities, absolute ownership is illegally suspended (Pers. Prop. Law [Cons. Laws, ch. 41], § 11), and the trust in its entirety is void, even though in some contingencies it may end within the statutory term (*Central Trust Co. of N. Y. v. Egleston,* 185 N. Y. 23; *Leach v. Godwin,* 198 N. Y. 35).'' There the court was able to salvage a portion of the will by finding the primary intention of testator that each of the four children, at majority, should have an equal share of the principal but the will here under construction is not possible of such an interpretation. (See, also, *Matter of Carvalho,* 57 N. Y. S. 2d 311, affd. 269 App. Div. 904, *supra.*)

The gift of the remainder after the termination of the trust as prescribed by the will is to the children of testatrix' son and

daughter living at the time of distribution, the issue of any grandchild, who may be deceased, to take the parent's share. The will contemplates that the grandchildren born during the trust period and living at its termination are to share in the remainder and the gift is clearly contingent. (*Matter of Silsby*, 229 N. Y. 396, *supra; Clark* v. *Cammann*, 160 N. Y. 315; *Matter of Curtis*, 252 App. Div. 256, affd. 278 N. Y. 589.) Since the remainders are contingent they may not be accelerated. (*Matter of Drake*, 153 Misc. 691, affd. 246 App. Div. 758, *supra; Kalish* v. *Kalish*, 166 N. Y. 368; *Matter of Durand*, 250 N. Y. 45, *supra; Matter of Halsey*, 286 N. Y. 154.) The property of which the trust was attempted to be created would ordinarily fall into the residuary estate but because of the renunciation of the residuary legatee and devisee of all his rights thereunder, the property will devolve as in intestacy.

Proceed accordingly.